```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :
                                     :
        - v. -                       :
                                     :    INFORMATION
DAVID HU,                            :
                                     :    20 Cr. __
            Defendant.               :
                                     :
- - - - - - - - - - - - - - - - - - x
```

## COUNT ONE
**(Conspiracy to Commit Investment Adviser Fraud, Securities Fraud, and Wire Fraud)**

The United States Attorney charges:

### IIG and the Defendant

1.   At all times relevant to this Information, the International Investment Group, LLC ("IIG") was an investment adviser registered with the U.S. Securities and Exchange Commission ("SEC").  IIG was a New Jersey limited liability company founded in 1994 with its principal place of business in New York, New York.   IIG provided investment management and advisory services, including for three private funds that it operated: (1) the IIG Trade Opportunities Fund N.V. ("TOF"); (2) the IIG Global Trade Finance Fund, Ltd. ("GTFF"); and (3) the IIG Structured Trade Finance Fund, Ltd. ("STFF").   IIG also advised the Venezuela Recovery Fund ("VRF"), a fund that managed the remaining assets of a failed Venezuelan bank whose liquidation was overseen by the Central Bank of Curacao (VRF, together with TOF, GTFF, and STFF,

the "IIG Funds"). In March 2018, IIG reported to the SEC that it had approximately $373 million in assets under management.

2. DAVID HU, the defendant, and a co-conspirator not named as a defendant herein ("CC-1"), co-founded IIG. HU was a Managing Partner and the Chief Investment Officer of IIG. CC-1 was a Managing Partner and the Chief Operating Officer of IIG.

### Background on IIG's Trade Finance Loans

3. IIG advertised itself as a specialty finance group involved in the financing of global trade transactions and specializing in providing customized financing solutions to small and medium-sized merchants, traders, and processors through trade finance loans. IIG's principal investment advisory strategy, including with respect to the IIG Funds, was investing in trade finance loans that it originated.

4. Trade finance loans are used by small and medium-sized companies, typically exporters and importers, to facilitate international trade and commerce. IIG's purported expertise was in trade finance loans to borrowers located in Central or South America, and in a variety of industries, with a stated focus on "soft commodities," such as coffee; agriculture; aquaculture, such as fishing; and other food products. IIG's trade finance loans were purportedly secured by collateral, such as the underlying traded goods, assets held by the borrowers, or expected payments by third parties.

5. Investments in TOF, STFF, and GTFF were marketed to institutional investors, such as pension funds, hedge funds, and insurers. In offering memoranda and communications with investors, IIG advertised strict risk controls, such as promises to use diligence to carefully select borrowers or issuers with trusted management and marketable assets, and portfolio concentration limits based on borrower, developing country, and industry.

6. IIG purported to value the trade finance loans in the IIG Funds on a regular basis. IIG and, in turn, DAVID HU, the defendant, received a performance fee with respect to the IIG Funds, as well as a management fee, which was calculated as a percentage of the assets under management held in the Funds.

## Overview of the Conspiracy

7. From at least in or about 2007 through in or about 2019, DAVID HU, the defendant, conspired to defraud investors in IIG-managed funds by (i) overvaluing distressed loans in the IIG Funds, (ii) falsifying paperwork to create a series of fake loans that were classified, fraudulently, as positively performing loans, and to otherwise hide losses, (iii) selling overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) using the proceeds from those fraudulent sales to generate liquidity required to pay off earlier investors in a Ponzi-like manner.

## HU AND CC-1 OVERVALUE ASSETS AND CREATE FAKE LOANS TO HIDE LOSSES IN TOF

8.  From approximately in or about 2007 through in or about 2019, DAVID HU, the defendant, and CC-1 engaged in multiple deceptive and fraudulent practices designed to conceal the true value of the IIG Funds from investors so that IIG – and HU and CC-1 – could continue to collect management and performance fees. For example:

    a. HU and CC-1 systematically caused IIG to mismark the value of multiple loans that had, in reality, defaulted (the "Defaulted Loans"). Instead of acknowledging the defaulted status of these loans, HU and CC-1 instead caused IIG to mark the Defaulted Loans at par plus accrued interest, even though HU and CC-1 knew that the borrowers' default significantly impaired the true value of these loans. HU and CC-1 certified these false valuations and caused them to be reported to investors.

    b. HU and CC-1 systematically caused IIG to mismark multiple loans that were distressed (the "Distressed Loans"). These Distressed Loans included, for example, loans for which the borrowers had missed multiple scheduled payments. Even though HU and CC-1 knew that the non-performing status of the loans significantly impaired their true value, they nevertheless caused IIG to continue to mark the loans at par plus accrued interest.

4

   c. With respect to TOF specifically, in order to hide the losses resulting from the Defaulted Loans, including from auditors reviewing TOF's financials, HU and CC-1 removed the Defaulted Loans from the TOF portfolio, replacing them with tens of millions of dollars in fictitious loans to purported borrowers in foreign countries (the "Fake Loans"). HU and CC-1 also created or directed the creation of documents to keep in IIG's files as purported documentation of the Fake Loans. For many of the Fake Loans, IIG's files contained promissory notes, but no additional loan documentation or due diligence files. To pass auditor scrutiny, HU and CC-1 also directed purported borrowers – sham foreign entities that were controlled by IIG's business associates and that did not engage in actual business – to provide confirmations of the Fake Loans to auditors, including by arranging for TOF to pay a monthly fee to one purported borrower in exchange for providing false confirmations. In reality, these purported borrowers did not receive a loan from TOF, and were not expected to make any payments to TOF.

  9. As a result of actions taken by DAVID HU, the defendant, and CC-1 to overvalue assets and hide losses in the TOF portfolio, TOF's stated value was fraudulently inflated, and this inflated value enabled IIG, and, in turn, HU and CC-1, to receive management and performance fees to which they were not entitled.

## HU AND CC-1 FURTHER THE SCHEME THROUGH TRANSACTIONS WITH A CENTRAL AMERICAN BANK AND VRF

10.   In or about 2010, DAVID HU, the defendant, and CC-1 caused TOF to acquire shares of a Central American bank ("Bank-1").  TOF purchased shares of Bank-1 in part by selling loans held by TOF, including Distressed, Defaulted, and/or Fake Loans, to generate cash proceeds that were provided to individuals and/or entities selling their shares of Bank-1.  After causing TOF to acquire shares of Bank-1, HU and CC-1 were named to Bank-1's Board of Supervisory Directors.  Subsequently, HU and CC-1 caused Bank-1, through an intermediary entity, to purchase interests in loans, including Defaulted Loans, Distressed Loans, and/or Fake Loans, held by IIG funds in order to generate liquidity for IIG funds.

11.   DAVID HU, the defendant, and CC-1 also caused VRF to invest in trade finance loans, including from some of the same borrowers for TOF's Defaulted Loans and Distressed Loans.  As described in paragraph 8, above, HU and CC-1 systematically caused IIG to overvalue Distressed Loans in VRF.  In approximately 2015, IIG ceased its role as investment adviser for VRF, but HU remained the sole director of VRF.  Beginning in or around early 2017, HU and CC-1 spearheaded an effort to cause IIG's Trade Finance Trust ("TFT"), a special purpose vehicle designed to originate and be the lender of record for IIG-originated trade finance loans, to purchase loans from VRF's portfolio, including Defaulted or

6

Distressed Loans, for approximately $6.3 million. HU and CC-1 then caused TFT to transfer the loans to STFF, where they continued to overvalue the loans, generating increased management and performance fees for IIG.

### HU AND CC-1 SECURITIZE LOANS IN THE TOF PORTFOLIO, HIDING LOSSES AND DEFRAUDING NEW INVESTORS

12. In or about 2014, DAVID HU, the defendant, and CC-1 obtained approximately $220 million in bank financing to create a collateralized loan obligation trust (the "CLO Trust"), for which IIG served as an investment adviser. HU and CC-1 then engaged in various deceptive acts, using the CLO Trust, to hide TOF's losses and generate liquidity for TOF, which was facing investor redemption requests and demands for repayment of loans that IIG had taken from international development banks.

13. For example, in its capacity as investment adviser for the CLO Trust, IIG, through the efforts of DAVID HU, the defendant, and CC-1, caused the newly-created CLO Trust to purchase loans from the TOF portfolio, including Defaulted Loans, Distressed Loans, and Fake Loans, which generated liquidity for TOF.

14. After the CLO Trust purchased loans in the TOF portfolio, IIG, through the efforts of DAVID HU, the defendant, and CC-1, generated additional liquidity by causing the CLO Trust to issue securitized debt instruments based on these loans, payable in various tranches to investors in the CLO Trust.

7

15.  IIG, through the efforts of DAVID HU, the defendant, and CC-1, also caused the CLO Trust to create new fraudulent trade finance loans, and used those new fraudulent loans to cover up TOF's losses.  Specifically, HU caused the creation of shell entities domiciled in Panama ("Panamanian Shell Entities") that were controlled by an IIG nominee.  Then, HU caused the CLO Trust to enter into fake loan transactions with the Panamanian Shell Entities.  HU caused the creation of fake promissory notes and other paperwork to conceal the fraudulent nature of the loans to the Panamanian Shell Entities.  Finally, under the guise of the fake loan transactions with the Panamanian Shell Entities, the CLO Trust disbursed funds that HU and CC-1 diverted to TOF in order to pay off TOF's various debts and obligations.

**HU AND CC-1 CREATE NEW FUNDS TO FURTHER CONCEAL THE FRAUD**

16.  In or about 2017, DAVID HU, the defendant, and CC-1 targeted a foreign institutional investor ("Institutional Investor-1") to raise money for two new private IIG managed funds: GTFF and STFF.  Institutional Investor-1 provided $70 million as the seed investment for GTFF, and, later, $130 million as the seed investment for STFF.

17.  Using funds from Institutional Investor-1 and other investors in GTFF, DAVID HU, the defendant, and CC-1 caused GTFF to purchase (a) assets from TOF and the CLO Trust, including more than $40 million in TOF's Fake Loans and the CLO Trust's fraudulent

8

loans, and (b) approximately $28 million in Distressed and Defaulted Loans made by the CLO Trust to an Argentine entity (the "Argentine Borrower"), including loan obligations that were the subject of disputes between IIG and the Argentine Borrower, without disclosing the true nature of the loans or the fact of the disputes to GTFF's investors.

18. Similarly, using funds from Institutional Investor-1, DAVID HU, the defendant, and CC-1 caused STFF to purchase (a) assets from TOF and the CLO Trust, including approximately $10 million in TOF's Fake Loans and the CLO Trust's fraudulent loans, and (b) approximately $25 million in Distressed and Defaulted Loans made by the CLO Trust to the Argentine Borrower, the status of which were in dispute, without disclosing the true nature of the loans or the fact of the dispute to STFF's investors.

**HU CONCEALS A $6 MILLION LOSS IN A RETAIL FUND ADVISED BY IIG**

19. In or about December 2012, IIG, controlled by DAVID HU, the defendant, and CC-1, became an investment adviser to an open-ended mutual fund marketed to retail investors (the "Retail Fund"). As an investment adviser to the Retail Fund, IIG made investment recommendations, including recommendations that the Retail Fund invest in trade finance loans originated by IIG.

20. On IIG's recommendation, the Retail Fund invested in loans to the Argentine Borrower. In or about February 2017, the Argentine Borrower had failed to pay the principal on an

9

approximately $6 million loan ("Loan-1") in which the Retail Fund had invested and which was nearing its maturity date.

21.   In order to ensure further investments by the Retail Fund into IIG-originated loans, including additional investments in loans made to the Argentine Borrower, DAVID HU, the defendant, took steps to conceal the default by the Argentine Borrower in Loan-1.

22.   For example, in or about March 2017, DAVID HU, the defendant, caused approximately $6 million to be transferred into an account associated with the Argentine Borrower from the account of a different borrower ("Borrower-1"), and further directed the funds from Borrower-1's account to pay off the debt owed by the Argentine Borrower to the Retail Fund.

23.   To replace the funds from Borrower-1's account that were used to make it appear as though the Argentine Borrower had resolved its debt to the Retail Fund, DAVID HU, the defendant, fraudulently induced the Retail Fund to invest in a new, fake $6 million loan to the Argentine Borrower (the "New Loan"). HU then directed that the proceeds from the fraudulently induced New Loan be transferred into Borrower-1's account, effectively reimbursing the account for the earlier $6 million transfer to the Retail Fund. To further conceal the fraudulent nature of the New Loan, HU caused the creation of forged documents to make it appear as though the New Loan was a legitimate loan to the Argentine Borrower.

24. In or about late 2017, representatives of the Retail Fund raised concerns with DAVID HU, the defendant, about the status of the Argentine Borrower, and status of the loan assets in the Retail Fund that were related to the Argentine Borrower. In communications with the Retail Fund about the Argentine Borrower and loan assets associated with the Argentine Borrower, HU repeatedly failed to disclose the fraudulent nature of the New Loan.

25. The Retail Fund ultimately lost the $6 million it invested in the New Loan.

## Statutory Allegations

26. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, DAVID HU, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (1) investment adviser fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17, (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and (3) wire fraud, in violation of Title 18, United States Code, Section 1343.

27. It was a part and object of the conspiracy that DAVID HU, the defendant, while an investment adviser, and others known

11

and unknown, willfully and knowingly would and did use the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

    28.  It was further a part and object of the conspiracy that DAVID HU, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit

upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

29. It was further a part and object of the conspiracy that DAVID HU, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

30. In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

   a. On or about January 18, 2018, DAVID HU, the defendant, while in New York, New York, signed an "Investment Valuation" for GTFF that was prepared for investors, certifying the valuation of loans in GTFF's portfolio, including Defaulted Loans, Distressed Loans, and Fake Loans, at par for the period of December 2017, and stating that "the Investment Managers have reviewed the Fund's portfolio and have confirmed that there are no loss provisions to be booked in this period."

b. On or about January 25, 2018, CC-1 emailed IIG employees, copying HU, directing the employees to collect $363,375.14 in management and performance fees for GTFF, and $527,282.89 in management and performance fees for STFF, for the fourth quarter of 2017, and wrote: "David and I spoke Friday and he is comfortable with all the final valuations for the 2 funds . . . Accordingly, please proceed with processing Q4 fees[.]"

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The United States Attorney further charges:

31. The allegations contained in Paragraphs 1 through 25 and 30 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

32. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, DAVID HU, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material

14

fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, HU engaged in a scheme to (i) overvalue distressed loans in VRF, TOF, STFF, and GTFF, (ii) falsify paperwork to create a series of fake loans that were classified, fraudulently, as performing loans, (iii) sell overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) use the proceeds from those sales to generate liquidity required to pay off earlier investors, through fraudulent misrepresentations and omissions, thereby also causing IIG to receive management and performance fees to which it was not entitled.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud)

The United States Attorney further charges:

33. The allegations contained in Paragraphs 1 through 25 and 30 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

34. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, DAVID

15

HU, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HU engaged in a scheme to (i) overvalue distressed loans in VRF, TOF, STFF, and GTFF, (ii) falsify paperwork to create a series of fake loans that were classified, fraudulently, as performing loans, (iii) sell overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) use the proceeds from those sales to generate liquidity required to pay off earlier investors, thereby also causing IIG to receive management and performance fees to which it was not entitled, and employed the use of telephones, email communications, and other wire communications in connection with the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATIONS AS TO COUNTS ONE THROUGH THREE**

35.  As a result of committing one or more of the offenses alleged in Counts One through Three of this Information, DAVID HU, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

16

States Code Section 2461, any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Three of this Information.

Substitute Assets Provision

36. If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

      (Title 18, United States Code, Section 981(a)(1)(C);
         Title 21, United States Code, Section 853(p);
         Title 28, United States Code, Section 2461.)

_____
AUDREY STRAUSS
Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**DAVID HU,**

**Defendant.**

**INFORMATION**

(Title 15, United States Code, Sections 78j(b), 78ff, 80b-6 and 80b-17; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Sections 2, 371 and 1343.)

AUDREY STRAUSS
Acting U.S. Attorney.