

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 4, 2020

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

       **Re:**    ***United States* v. *David Hu*,**
            **20 Cr. 360 (AKH)**

Dear Judge Hellerstein:

      The Government respectfully submits this letter concerning a potential conflict of interest presented by the representation of defendant David Hu ("Hu" or "the defendant") by Howard Schiffman, Esq., and other attorneys from the law firm of Schulte Roth & Zabel LLP ("Schulte" or the "Schulte lawyers").

      The potential conflict stems from Schulte's representation of Hu, co-owner of the investment adviser firm International Investment Group, LLC ("IIG"), in a previous transaction. As discussed further below, the Government sets forth the following facts and proposals in an abundance of caution, and the Government believes the potential conflict is waivable. The defendant has consulted with independent counsel, Charles E. Clayman, Esq., with respect to the potential conflict. Mr. Clayman has advised the Government that he and the defendant do not believe the relevant facts set forth a conflict, and the defendant wishes to waive any potential conflict. Attorneys at Schulte have also conveyed that they do not believe that the relevant facts set forth a conflict. Accordingly, the Government requests that the Court conduct a *Curcio* hearing with respect to the defendant and any potential conflicts of interest that may exist. To that end, the Government encloses herewith a list of questions it proposes to be put to the defendant. Counsel for the defendant consents to these requests and joins in the Government's request to have these questions be put to the defendant.

      While the *Curcio* proceeding could be conducted as part of the January 7, 2020 plea proceeding currently scheduled, the Government respectfully requests that the *Curcio* proceeding

occur sufficiently in advance of that date to allow the defendant time to consider the issue and further consult with independent counsel, if necessary.   At the request of the defendant and defense counsel and in light of the COVID-19 pandemic, the parties additionally request that the *Curcio* proceeding take place via videoconference.   As a necessary component of the plea proceeding, such videoconference would be within the scope of the CARES Act, Pub. L. No. 116-136, 134 Stat. 281, §§ 15002(b)(2), (4), and the Chief Judge's Standing Orders (*see* In re Coronavirus/COVID-19 Pandemic, Suspension of In-Person Operations, 20-mc-00622 (S.D.N.Y. Nov. 30, 2020); *see also* In re Coronavirus/COVID-19 Pandemic, Video Teleconferencing and Telephone Conferencing for Criminal Proceedings, 20-mc-00176 (S.D.N.Y. Sept. 16, 2020)).

### A.  Background

On or about July 17, 2020, Hu was charged by Information 20 Cr. 360 (AKH) with investment adviser fraud, securities fraud, and wire fraud offenses in connection with his perpetrating a scheme to defraud investors in IIG's funds, including by creating fictitious investments and overvaluing investments used to generate funds to pay off earlier investors.   A guilty plea proceeding is scheduled for January 7, 2020.

Beginning in early 2017 and continuing into 2019, Schulte represented Hu in a transaction involving IIG and an investment fund associated with the Central Bank of Curacao and Sint Maarten (the "Central Bank") known as the Venezuela Recovery Fund, NV ("VRF") (the "VRF Transaction"). [1]   VRF managed the remaining assets of a failed Venezuelan bank whose liquidation was overseen by the Central Bank.   For years, including through the time of the VRF Transaction, Hu was the director of VRF and, until approximately 2015, Hu and IIG managed VRF's funds.

Hu had previously caused VRF to invest in trade finance loans,[2] including from some of the same borrowers for defaulted and distressed loans held in other IIG funds.   As described in more detail in the Information, Hu and others systematically caused IIG to overvalue distressed loans in VRF.   (Information ¶¶ 8, 11).

In the VRF Transaction, VRF agreed to sell to another IIG entity—the Trade Finance Trust ("TFT"), a special purpose vehicle designed to originate and be the lender of record for IIG-originated trade finance loans—loans in VRF's portfolio (the "VRF Assets").   In the course of

---

[1] Hu was one of the two co-owners of IIG and the director of VRF at the time.   Based on information provided by Schulte attorneys, including after a review by the firm of the firm's billing and other records, (a) Mr. Schiffman has never represented IIG and VRF, including in this transaction, and (b) Hu agrees that Mr. Schiffman did not represent IIG and VRF, in this transaction or otherwise, and that IIG and VRF were represented by separate counsel in the relevant transaction.

[2] Trade finance loans are loans made to small- to medium-sized businesses, usually commodities exporters located in emerging markets, such as Latin America.

the VRF Transaction, Hu directed VRF to pay Schulte, as indemnification on his behalf in satisfaction of bills for legal services rendered to him by Schulte, approximately $124,097 in attorney's fees.   In total, Hu caused VRF to pay a total of approximately $600,000 in attorneys' fees to various counsel involved in the transaction, including counsel representing IIG, counsel representing IIG's other owner, Martin Silver, and to Schulte as described above.   The Central Bank later disputed the payment of the attorney's fees from VRF to Schulte and others.   While the VRF Transaction was agreed to in principle in or about 2017, and TFT issued funds in exchange for the VRF Assets, the written agreement governing the transaction was never executed, in part due to the attorneys' fees dispute.   By at least January 2019, approximately $6.3 million, representing funds paid by TFT in exchange for the VRF Assets, was maintained in an account on VRF's behalf (the "VRF Account") at a certain bank ("Bank-1").   The VRF account was controlled in part by Hu, acting on behalf of VRF.

In or about July 2019, Bank-1 informed IIG that it planned to close the VRF Account, and it issued a check made out to VRF in the amount of approximately $6.3 million (the "Check"). IIG, through Hu and others, took custody of the Check.   In or about September and October 2019, Mr. Schiffman, counsel for Silver, and separate counsel for VRF discussed finally executing the written agreement governing the VRF Transaction, which included all parties, including (through an intermediary) the Central Bank, releasing any claims to claw back attorneys' fees.   In connection with the planned execution of the written agreement, in or about October 2019, IIG provided the Check to counsel for VRF.   After learning of the existence of the Check, the Government obtained it from separate counsel for VRF and has taken steps to maintain the funds, which represent proceeds of the above-described fraud, during the pendency of this case.

Since in or about June 2019, Schulte lawyers have represented Hu in connection with the criminal investigation that resulted in the charges contained in the Information.   In or about October 2019, the Government became aware of Schulte's representation of Hu during the course of the VRF Transaction, following which the defendant consulted with independent counsel, Mr. Clayman, regarding the relevant facts.

**B. Applicable Law**

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel."   *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).   Where there is even a possible or potential conflict of interest, district courts have two separate obligations.   First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."   *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994).   Second, if the district court finds after some inquiry that the defendant's attorney suffers from a potential or actual conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.   *See United States v. Curcio*, 694 F.2d 14, 20 (2d Cir. 1982).

A *per se* conflict of interest exists where counsel is not admitted to practice law, or is implicated in the same crime as the defendant.   *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000).   "An actual conflict between a lawyer and his client exists when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action."   *Armienti v. United States*, 313 F.3d 807, 811 (2d Cir. 2002) (quotation marks and citation omitted).   "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'"   *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States v. Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).   If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation."   *Id*. Judge Kaplan has observed that:

> The Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things, (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client, (4) whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated, (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and (6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client.

*United States v. Stein*, 410 F. Supp.2d 316, 328 (S.D.N.Y. 2006) (international citations omitted).

## C.  Conclusion

The Government submits this letter in an abundance of caution to ensure that Hu has considered, and waives, any potential conflict that hypothetically could exist with the Schulte attorneys.   The Government currently has no reason to believe that Schulte attorneys' representation of Hu in this criminal case poses either a *per se* or an actual conflict of interest. The Government currently has no information that Schulte attorneys were aware of the fact that the VRF Transaction involved fraudulent loans or crime proceeds at the time it was conducted. Nor is the Government aware of any actual divergent interests between Hu and his counsel in this criminal matter.   At issue here is a potential conflict of interest with respect to Hu's decision to proceed in this criminal action represented by attorneys at Schulte in light of Schulte's

4

representation of Hu in the VRF Transaction.   In light of this situation, the Government respectfully requests that the Court conduct a hearing pursuant to the Second Circuit's ruling in *United States v. Curcio* to advise Hu of his right to conflict-free representation and to inquire as to whether he understands and waives the potential conflicts here.   After advising the defendant of the potential risks inherent in Schulte's representation of him, the Government requests that the Court afford the defendant reasonable time to digest and contemplate those risks and, should he wish, to further discuss them with independent counsel.   *Curcio*, 680 F.2d at 890.   As described above, Mr. Clayman has conveyed that he has fully discussed the relevant facts and issues with Hu, Hu does not wish to consult with any other independent counsel, and Hu is prepared to waive any potential conflict without further consultation with Mr. Clayman.

If the defendant subsequently informs the Court that he wishes to proceed with Schulte as his counsel, the Government requests that the Court elicit narrative responses from him designed to ascertain whether he is fully aware of the potential risks involved in the representation provided by Schulte, and determine whether the defendant is making a knowing and intelligent waiver of his right to conflict-free representation.

If, after a full inquiry (and although the Government does not currently believe that the conflict is unwaivable or that counsel should be disqualified), the Court determines that a defendant has not knowingly waived a conflict; that a conflict is so egregious that no rational defendant could waive it; or that allowing continued representation of the defendant by extant counsel would not ensure that a case would be conducted "within the ethical standards of the profession" such that the case appears "fair to all who observe [it]," then the Court has broad discretion to impose disqualification.   *Wheat v. United States*, 486 U.S. 153, 160 (1988);*see United States v. Zichettello*, 208 F.3d 72 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe"); *Tineo v. Kelly*, 870 F.2d 854, 857 (2d Cir. 1989) (upholding discretion of trial judge to disqualify defense counsel who had previously represented government witness even when offer was made to limit any cross-examination to only non-privileged materials); *United States v. DiTomasso*, 817 F.2d 201 (2d Cir. 1987) (noting that "[i]n this circuit, an attorney may be disqualified from representing a client in a particular case if . . . the attorney whose    disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client."); *United States v. Kaufman*, 429 F.2d 240, 247 (2d Cir. 1970) (upholding district court's disqualification of lawyer from representing defendant when the lawyer previously represented a codefendant); *see generally Wheat*, 486 U.S. 153.

       For the convenience of the Court, the Government is attaching a set of proposed questions to be put to the defendant as part of the *Curcio* inquiry.

<div style="margin-left:40%">

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

</div>

By:     /s_____
        Drew Skinner / Negar Tekeei / Alex Rossmiller
        Assistant United States Attorneys
        (212) 637-1587

cc:    Defense counsel (by ECF)

<div align="center">

**Proposed *Curcio* Examination**
**United States v. David Hu**

</div>

**A.      Introductory Questions to Establish Competence**

Age

Education

Current medications

Alcohol, drugs, medications within past 24 hours

Is anything interfering with your ability to understand what is happening here today?

**B.      Potential Conflict of Interest Posed by Schulte's Representation of Hu in the VRF Transaction**

1.      Are you satisfied with the services of Mr. Schiffman and the other Schulte attorneys thus far in the case?

2.      Are you aware that Mr. Schiffman, and the Schulte law firm, represented you in connection with a sale of VRF assets, including trade finance loans, to TFT from about 2017 to 2019?

3.      Do you understand that Mr. Schiffman's and Schulte's understanding is that they only represented you in that transaction, not IIG or VRF or any other party?   Is that correct, to your understanding?

4.      Are you aware that the Government has alleged that at least one of the loans involved in the VRF Transaction was part of the fraudulent scheme charged in this case and that the funds paid by TFT represent proceeds of the charged offenses? In other words, do you understand that the VRF Transaction is part of the criminal conduct alleged by the Government in this case?   Additionally, do you understand that the Government may view either VRF, which initially held the loans, and/or the ultimate beneficiaries of the entity that purchased the loans, as victims of the criminal conduct alleged against you in this case?

5.      Are you aware that the Central Bank of Curacao and Sint Maarten, which has an interest in the VRF Transaction through one of the entities involved in the transaction, disputed the attorney's fees paid in connection with that transaction, including certain fees paid to Schulte?

6.      Do you understand that the fact that Mr. Schiffman and Schulte were involved in representing you in that VRF Transaction could potentially lead Mr. Schiffman—

<div align="center">7</div>

or even other Schulte lawyers not involved in the VRF Transaction—to have divided loyalties between themselves and you or between Schulte and you?

7.    Let me give you some examples of the ways in which Schulte attorneys' representation of you in that transaction *could potentially* adversely affect, or have the appearance of potentially affecting, their representation of you in this case. Please understand no one is alleging these potential conflicts actually exist, or that your attorneys did or will act in any manner adverse to you.  These are simply potential conflicts that I need to ask if you understand and, as a result, are hypothetical.

    a.    Do you understand that Schulte attorneys may have had, or may have in the future, an incentive to conceal or to not provide to the Government full information about the VRF Transaction, or about their or your role in it (if any), out of concern the Government may think the attorneys did something unlawful in connection with that transaction?

    b.    Do you understand that Schulte attorneys may have personal financial interests in the VRF Transaction successfully closing (however small relative to other attorney's fees), and in any dispute over attorney's fees paid to Schulte being resolved, that may result in Schulte attorneys' taking certain actions in this criminal case to make the deal more likely to close, for example, by attempting to prevent the Government from obtaining funds related to the transaction or to prevent the Government from obtaining information about the transaction?  Do you understand this may provide financial incentives to Schulte attorneys even if they were not directly paid for, or involved in, the VRF Transaction?

    c.    Do you understand that Schulte attorneys could potentially have an interest in you pleading guilty, or otherwise quickly resolving this criminal case, in a manner that made it more likely that the Government would not further investigate the VRF Transaction or Schulte attorneys' role in it, or act in a way that would prevent Schulte from retaining attorney's fees from that transaction?

8.    Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

9.    Do you understand that the greatest danger to you is in the inability to foresee all of the possible conflicts that might arise because of the Schulte attorneys' prior representation of you in the VRF Transaction and their current representation of you in this criminal case?

**C.**     **The Right to Conflict-Free Representation**

10.     Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests?   In other words, do you understand that you are entitled to an attorney who has only your interests in mind?

11.     Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

12.     Have you consulted with any attorneys other than the Schulte attorneys about the dangers to you of this potential conflict of interest?

13.     Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with Mr. Clayman, or any other independent attorney?

14.     Do you understand that if you wished to have a separate or additional independent attorney that the Court could appoint one for you if you could not afford one? Are you satisfied with the services of Mr. Clayman as your counsel in this regard?

**D.**     **Continuation of *Curcio* Hearing**

15.     After considering all that I have said today about the ways in which the Schulte attorneys' prior representation of you in the VRF Transaction could have the potential to adversely affect your defense, do you believe that it is in your best interest to continue with the Schulte attorneys as your counsel?   Is that your wish?

16.     Do you understand that by choosing to continue with the Schulte attorneys, you are waiving your right to be represented solely by an attorney who has no possible conflict of interest?

17.     Are you knowingly and voluntarily waiving your right to representation that does not involve any potential conflict?

18.     Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of the Schulte attorneys' prior representation you and their involvement in the VRF Transaction, you were denied effective assistance of counsel by the Schulte attorneys?

19.     Is there anything that I have said that you wish to have explained further?

9