L1S6HUXP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        20 CR 360(AKH)

5  DAVID HU,

6                  Defendant.

7  ------------------------------x
                                        Plea
8

9                                       New York, N.Y.
                                        January 28, 2021
10                                      12:05 p.m.

11

   Before:
12

13                   HON. ALVIN K. HELLERSTEIN,

                                        District Judge
14

15                        APPEARANCES

16  AUDREY STRAUSS
         United States Attorney for the
17       Southern District of New York
   DREW SKINNER
18  NEGAR TEKEEI
         Assistant United States Attorneys
19

20  SCHULTE ROTH & ZABEL, LLP
         Attorneys for Defendant
   BARRY BOHRER
21  HOWARD SCHIFFMAN

22

23

24

25

L1S6HUXP

1                      (Telephone Conference)

2                      THE COURT:  Good morning.  This is Judge Hellerstein.

3                      THE DEPUTY CLERK:  Good afternoon, Judge.  I believe

4        we have everyone on the call.  I will call the case.  This is

5        U.S. V David Hu.

6                      Counsel, please state your appearance for the record.

7                      MR. SKINNER:  Good morning, Judge.  For the government

8        Drew Skinner and Negar Tekeei.

9                      THE COURT:  Good afternoon.

10                     MR. BOHRER:  Good afternoon, your Honor.  For the

11       defendant, Mr. David Hu, this is Barry Bohrer of Schulte Roth &

12       Zabel, LLP, and I believe on the line with me is Howard

13       Schiffman of Schulte Roth & Zabel, LLP, co-counsel.

14                     THE COURT:  Thank you.

15                     Mr. Hu, are you on the line?

16                     THE DEFENDANT:  Yes, I am, your Honor.

17                     THE COURT:  The first thing I need to do is make a

18       certain finding that we can proceed without a court appearance.

19       As you probably know because of the COVID virus, the Court has

20       restricted court appearances out of fear of spreading the

21       virus; but we have been given authority by Congress to proceed

22       remotely by telephone if necessary provided that the defendant

23       consents.

24                     So my question to you, Mr. Hu, is whether you consent

25       to proceeding in this way.

L1S6HUXP

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, I do, your Honor. |
| 2 | THE COURT:  Is there any objection, Mr. Bohrer? |
| 3 | MR. BOHRER:  There is not, your Honor. |
| 4 | THE COURT:  I find that it is in the interest of |
| 5 | justice to proceed and move ahead with the change of plea |
| 6 | proceeding that is proposed here today. |
| 7 | The second thing I wish -- |
| 8 | THE DEPUTY CLERK:  Please mute your phones or answer |
| 9 | your call. |
| 10 | THE COURT:  Second, Mr. Skinner, are you aware of the |
| 11 | *Brady* order filed in this case? |
| 12 | MR. SKINNER:  Yes, Judge. |
| 13 | THE COURT:  Do you represent the government has |
| 14 | produced all *Brady* material? |
| 15 | MR. SKINNER:  Yes. |
| 16 | THE COURT:  Are you happy with that representation, |
| 17 | Mr. Bohrer, or is there something you feel that you didn't get? |
| 18 | MR. BOHRER:  We accept the representation, your Honor, |
| 19 | and we reserve the right to make further applications in that |
| 20 | regard; but I aware of nothing specifically that we have not |
| 21 | received. |
| 22 | THE COURT:  Mr. Hu, in order for me to entertain a |
| 23 | plea of guilty, which is what I understand you want to do, I |
| 24 | have to put you under oath and question you to make sure that |
| 25 | the plea is voluntary, that you understand the consequences, |

L1S6HUXP

1    and that there is an independent basis of fact to support the

2    plea.  Since you are under oath, you have to tell me the truth,

3    the whole truth and nothing but the truth.  If you fail to do

4    that, you expose yourself to additional penalties.

5              Shall we proceed?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Ms. Jones, please swear Mr. Hu.

8              THE DEPUTY CLERK:  Mr. Hu, raise your right hand.

9              (Defendant sworn)

10             THE DEPUTY CLERK:  Please state your full name for the

11   record.

12             THE DEFENDANT:  David Hu, H-u.

13             THE COURT:  How old are you, Mr. Hu?

14             THE DEFENDANT:  I am 63.

15             THE COURT:  Where were you born?

16             THE DEFENDANT:  I was born in Guatemala City,

17   Guatemala.

18             THE COURT:  Are you a naturalized citizen of the

19   United States?

20             THE DEFENDANT:  Yes, I am.

21             THE COURT:  As of when?

22             THE DEFENDANT:  I believe it was since 1992.

23             THE COURT:  Do you have any dependents?

24             THE DEFENDANT:  Yes.  My spouse.

25             THE COURT:  Any minor children?

L1S6HUXP

1          THE DEFENDANT:  No.

2          THE COURT:  Tell me about your education.

3          THE DEFENDANT:  I have a bachelor of science in civil

4    engineering from the University of San Carlos in Guatemala and

5    a master in international management from the Thunderbird

6    School of Management now part of Arizona State University.

7          THE COURT:  So of course you can read and write

8    English?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Coming in today have you had any narcotics

11    or medicines or any substance that could affect your thinking?

12          THE DEFENDANT:  No narcotics.  Just my daily

13    medication for my medical condition.

14          THE COURT:  Do those medicines that you take affect

15    your mental alertness?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  So you are mentally alert?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Have you had occasion to speak fully with

20    the case with Mr. Bohrer and/or Mr. Schiffman?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Have you told them everything relevant?

23          THE DEFENDANT:  Everything related to the case, your

24    Honor?

25          THE COURT:  Yes.

L1S6HUXP

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes. |
| 2 | THE COURT:  Are you satisfied with Mr. Bohrer's |
| 3 | representation? |
| 4 | THE DEFENDANT:  Yes, your Honor. |
| 5 | THE COURT:  Has anyone tried to influence you to plead |
| 6 | guilty by promising you anything or intimidating you in any |
| 7 | way? |
| 8 | THE DEFENDANT:  No, your Honor. |
| 9 | THE COURT:  Are you offering to plead guilty because |
| 10 | it is something you want to do for yourself? |
| 11 | THE DEFENDANT:  Yes, your Honor. |
| 12 | THE COURT:  Do you understand that after taking advice |
| 13 | of counsel that it is the best thing for you to do in your |
| 14 | circumstance? |
| 15 | THE DEFENDANT:  Yes, your Honor. |
| 16 | THE COURT:  You do understand, Mr. Hu, that you have a |
| 17 | presumption of innocence so that you cannot be found guilty of |
| 18 | a crime unless the government proves that crime beyond a |
| 19 | reasonable doubt to the satisfaction unanimously of the jury; |
| 20 | you are aware of that? |
| 21 | THE DEFENDANT:  Yes, I am aware of that, your Honor. |
| 22 | THE COURT:  You are also aware that you have the right |
| 23 | to counsel at every aspect of the criminal proceedings? |
| 24 | THE DEFENDANT:  Yes, I do. |
| 25 | THE COURT:  And that if you cannot afford a lawyer, |

L1S6HUXP

1    the government will provide a lawyer to you free of charge?

2                    THE DEFENDANT:  Yes, I am aware of that.

3                    THE COURT:  With the help of that lawyer, you can

4    confront all witnesses against you, cross-examine them, and

5    require any witness having favorable information to come to the

6    trial whether that would witness wished to do so or not.

7                    Do you understand all that?

8                    THE DEFENDANT:  Yes, I do understand it.

9                    THE COURT:  You yourself would have the right to

10   testify if you wished to testify and if you didn't wish to

11   testify, you wouldn't have to and no inference could be drawn

12   against you; right?

13                   THE DEFENDANT:  Yes, I understand that.

14                   THE COURT:  If you plead guilty, you have give up

15   these rights and you authorize me to punish you the say way I

16   could if a jury brought in a verdict of guilty against you.

17                   You are wear of that?

18                   THE DEFENDANT:  Yes.  I am aware of that.

19                   THE COURT:  I see that there is a plea agreement that

20   you have signed and Mr. Bohrer has sign on January 26th.

21                   Is that your signature at the bottom of the January 26

22   document?

23                   THE DEFENDANT:  Yes, your Honor.

24                   THE COURT:  Mr. Bohrer, is that yours?

25                   MR. BOHRER:  It is your Honor.

L1S6HUXP

1    THE COURT:  I referred to the January 26 document by

2    its indicate.

3    Have you gone through this document, Mr. Hu, with your

4    lawyers?

5    THE DEFENDANT:  Yes, I have.

6    THE COURT:  Do you understand that you are pleading

7    guilty to three counts?  You are pleading guilty to each of

8    three counts?

9    THE DEFENDANT:  Yes, I am aware of that.

10   THE COURT:  There is an information that describes

11   these counts, which if you wish we can read to you; but if you

12   know it and discussed it, you can waive that.

13   THE DEFENDANT:  I read them and discussed them.

14   THE COURT:  So it is not necessary to read them again?

15   THE DEFENDANT:  No, your Honor.

16   THE COURT:  Count One alleges a conspiracy that you

17   committed with others, committing investment advisor fraud,

18   securities fraud, and wire fraud from the period 2007 to about

19   2019.

20   Are you aware of that charge?

21   THE DEFENDANT:  Yes, I am aware of that.

22   THE COURT:  Are you aware that the statutory penalties

23   provided by Congress carries a maximum term of imprisonment of

24   five years; a maximum term of supervised release of three

25   years; a supervised release is subject to conditions, the

L1S6HUXP

1  violation of which could lead to a hearing; and a further order

2  of custody beyond those you have already served; are you aware

3  of that?

4          THE DEFENDANT:  Yes, I am aware of that.

5          THE COURT:  There is also a provision for a fine in

6  the amount of $250,000 or twice the grain or twice the loss,

7  whichever is greater.

8          Are you aware of that?

9          THE DEFENDANT:  Yes, I am aware of that.

10          THE COURT:  Are you also aware of the mandatory $100

11  special assessment per count, $300 in all?

12          THE DEFENDANT:  Yes, I am aware.

13          THE COURT:  I have to go through this.  So even though

14  these questions may sound inane to you, they are necessary for

15  the record.  So bear with me.

16          You are also pleading to Count Two of the information

17  charging you with securities fraud in the same time period.

18          Are you aware of that?

19          THE DEFENDANT:  Yes, I am.

20          THE COURT:  In that count carries a maximum term of

21  imprisonment of 20 years; a maximum term of supervised release

22  of three years, subject to the same kinds of conditions and

23  potential for violations as I mentioned before; a maximum fine

24  of $5 million or twice the gross pecuniary gain or twice the

25  gross pecuniary loss whenever is greater; and a mandatory

L1S6HUXP

1    special assessment of $100.

2              Are you aware of all that?

3              THE DEFENDANT:  Yes, I am.

4              THE COURT:  Count Three of the information charges you

5    with wire fraud in the same time period.  That count carries a

6    maximum term of imprisonment of 20 years; a maximum term of

7    supervised release of three years, subject to the conditions I

8    mentioned before; and a maximum fine of the greatest of

9    $250,000 or twice the loss or twice the gain; plus a $100

10   mandatory special assessment.

11             Are you aware of all that?

12             THE DEFENDANT:  Yes, I am aware of all that.

13             THE COURT:  The total maximum term provided by statute

14   if I accumulate them could be 45 years.

15             Do you understand that as well?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  Now, there is an analysis in this letter,

18   which I am sure you read, to the sentencing guidelines and how

19   they would apply to your case.  You should know that I have not

20   been party to this calculation.  I have to make my own

21   calculation prior to sentence.  I can sentence you within the

22   guidelines or below them or above them.  Your guidelines are

23   not mandatory.  It is possible that what I do could disappoint

24   you.  You should know that if you are disappointed, you will

25   not have grounds for withdrawal of the plea on that ground.

L1S6HUXP

1   Once you plead guilty and I accept it, you are bound.

2          Do you understand?

3          THE DEFENDANT:  Yes, I do understand.

4          THE COURT:  The sentencing guidelines calculate these

5   three crimes together.  The various adjustments are made

6   because you are investment advisor or associated with an

7   investment advisor, you were an organizer, leader, manager or

8   supervisor.  These are added onto the offense.  There are 24

9   levels assigned in addition to the base level of seven because

10   the loss amount is more than $65 million and less than $150

11   million.  There is an entitlement to a three-level reduction

12   because of your acceptance of responsibility on a timely basis.

13          According to this letter all of that adds up to 38 as

14   an offense level.  Since you have no criminal history, you are

15   treated in a criminal history category I.  All that yields a

16   range of custodial punishment of 235 and 293 months.

17          Are you aware of that?

18          THE DEFENDANT:  Yes, I am aware of that.

19          THE COURT:  It doesn't mean that I have to sentence

20   within that range.  I can sentence below that range.  I can

21   sentence above that range depending on my perception of what is

22   a just punishment but always below the statutory maximum.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do understand.

25          THE COURT:  Now, you and the government have agreed

L1S6HUXP

1    that neither of you will ask for an upward or downward

2    departure from this guideline range and that is so long as I

3    punish you within or below the range.  You will not have

4    grounds for appeal and you will not have grounds for a petition

5    for review under Section 2254 a nature of habeas corpus.

6              Right?

7              THE DEFENDANT:  Yes, I understand.

8              THE COURT:  So long as I sentence you within the

9    guideline range, you can't appeal and you can't ask for

10   post-conviction review?

11             THE DEFENDANT:  Yes, I understand.

12             THE COURT:  However, you are free and your lawyer is

13   free to tell me anything that is relevant on the sentence,

14   which will enable me to vary the sentence either upwards or

15   downwards.

16             Understand?

17             THE DEFENDANT:  Yes, I understand.

18             THE COURT:  Is there anything else in the letter that

19   you wish me to review?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  Mr. Bohrer, is there anything else that

22   you wish to go into further?

23             MR. BOHRER:  No, your Honor.

24             THE COURT:  Okay.

25             MR. SKINNER:  Judge, could I suggest one issue?

L1S6HUXP

1           THE COURT:  I cannot hear you.

2           MR. SKINNER:  Can I suggest one additional area?

3           THE COURT:  Yes, Mr. Skinner.

4           MR. SKINNER:  Just to confirm like the Court did about

5    the appeal and collateral attack waiver as to the guidelines

6    sentencing range, just to confirm that the defendant also

7    understands as it states in the same paragraph in the agreement

8    that he is agreeing not to appeal or collaterally challenge the

9    current supervised release that is less than or equal to the

10   statutory maximum, a fine that is less than or equal to $5

11   million, and a special assessment of less than or equal to

12   $300.

13           THE COURT:  Do you understand, Mr. Hu?

14           THE DEFENDANT:  Yes, I do, your Honor.

15           THE COURT:  Anything else, Mr. Skinner?

16           MR. SKINNER:  No.  Thank you, Judge.  I think at

17   another time we'll cover the restitution and forfeiture.

18           THE COURT:  We're going to go into it.

19           There is one more aspect of the letter and that is an

20   agreement of forfeiture.

21           Are you aware of that, Mr. Hu?

22           THE DEFENDANT:  Yes, I am.

23           THE COURT:  What is the amount, Mr. Skinner?

24           MR. SKINNER:  Judge, in the agreement in page 2, I

25   believe, there are two aspects of the forfeiture that he is

L1S6HUXP

1    agreeing to here.  One is the sum of money equal to

2    $129,506,992.  The second is all right, title and interest in

3    money represented by a check in the amount of $6,369,339.72.

4    There is also a consent preliminary order of forfeiture that

5    the defendant signed and the Court has.

6                THE COURT:  Yes.

7                Do you understand that, Mr. Hu?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  Mr. Bohrer, do I have your consent to sign

10   that consent?

11               MR. BOHRER:  Yes, your Honor.

12               THE COURT:  It will be signed and filed.

13               There is also restitution in the case.  It is a

14   mandatory restitution.  It is in the amount --

15               MR. SKINNER:  Judge, there is no specific number in

16   the plea agreement.  It is on the bottom of page 2.  It just

17   says the defendant understands he will make restitution in an

18   amount to be specified by the Court.

19               THE COURT:  By allocuting his right, title and

20   interest in a check made payable to the defendant recovery fund

21   in the amount of $6,369,339.72.

22               MR. SKINNER:  I mentioned that in the second aspect of

23   the forfeiture amount, and I think the defendant said he

24   understood that.

25               THE COURT:  You are consenting to this, Mr. Hu?

L1S6HUXP

1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  These are forfeiture obligations.

3          In addition there are restitution obligations.

4          Where is that, Mr. Skinner?

5          MR. SKINNER:  It is at the bottom of page 2.  I think

6     it is sufficient if the defendant says he is agreeing to make

7     restitution in an amount to be ordered by the Court.

8          THE COURT:  Are you, Mr. Hu?

9          THE DEFENDANT:  Yes, I am.

10          THE COURT:  So this is going to be an amount to be

11    worked out by your lawyer and government and submitted to me in

12    a form of an order prior to or if you ask me shortly after the

13    sentencing.

14          Are you aware of that?

15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  Okay.  Anything else, Mr. Skinner, about

17    the agreement?

18          MR. SKINNER:  No.  Thank you, Judge.

19          THE COURT:  Mr. Skinner, can you tell me what the

20    material propositions are that you have to prove and what proof

21    you would use to prove those propositions.

22          MR. SKINNER:  Yes, Judge.  I will go through the

23    elements of the three counts.  The first count, conspiracy to

24    commit investment advisor fraud, securities fraud, and wire

25    fraud has three elements.

L1S6HUXP

1          The first element is the existence of a conspiracy,

2    that is, an agreement or understanding to commit the unlawful

3    object of the charged conspiracy.  Here, the three objects are

4    investment advisor fraud, securities fraud, and wire fraud.

5          Second, that the defendant willfully and knowingly

6    became a member of the conspiracy.

7          Third, that any one of the co-conspirators knowingly

8    committed at least one overt act in the Southern District of

9    New York in furtherance of the conspiracy during the life of

10   the conspiracy.

11         I will cover the securities fraud and wire fraud

12   objects when we get to those counts, but with respect to

13   investment advisor fraud object there are four elements of that

14   crime.  First, the defendant was an investment advisor.

15   Second, the defendant did one of the following:  (A) employed a

16   device, scheme, or artifice to defraud an actual or prospective

17   advisory client; (B) engaged in a transaction, practice or

18   course of business which operated the fraud in deceit upon

19   those invest advisory clients or prospective clients; or (C)

20   engaged in an act, practice and course of business that was

21   fraudulent, defective and manipulative.  The third element is

22   that the defendant devised or participated in such alleged

23   device, scheme or artifice to defraud or engaged in such

24   alleged transaction, practice or course of business knowingly,

25   willfully and with the intent to defraud.  The fourth element

L1S6HUXP

1    is that the defendant employed such alleged devise, scheme or

2    artifice to defraud or engage in such alleged transaction

3    practice or course of business by use of the mails or

4    instrumentality of interstate commerce.  That was Count One.

5           Count Two, securities fraud has three elements.

6    First, in connection with the purchase or sale of the

7    securities, the defendant did anyone one or more the following:

8    (A) employed a device, scheme or artifice to defraud; (B) made

9    an untrue statement of a material fact or omitted to state a

10   material fact, which made what was said under the circumstances

11   misleading; or (C) engaged in an act, practice, or course of

12   business that operated or would operate as a fraud or deceit

13   upon a purchaser or seller.

14          The second element, the defendant acted knowingly and

15   willfully and with the intent to defraud.  The third element,

16   the defendant used or caused to be used any means or

17   instruments of transportation or communication in interstate

18   commerce, the facilities of a national securities exchange, or

19   the use of the mails in furtherance of the fraudulent conduct.

20          The third count, and the third object of the

21   conspiracy wire fraud, has three elements.  First, there is a

22   scheme or artifice to defraud or to obtain money or property by

23   false and fraudulent pretenses, representations, or promises.

24          Second, that the defendant knowingly and willfully

25   participated in the scheme or artifice to defraud with

L1S6HUXP

1    knowledge of its fraudulent nature and with specific intent to

2    defraud.

3              Third, in the execution of the scheme, the defendant

4    used or caused the use of interstate or foreign wires.

5              We would also have to prove venue for each of these

6    counts in that there was an act in furtherance of the scheme to

7    defraud or the conspiracy in the Southern District of New York.

8              Here, IIG's office was located in Manhattan and Hu

9    took various actions in furtherance of the schemes from IIG's

10   office.  In addition, there were email communications and wire

11   communications sent to and from the Southern District of New

12   York in furtherance of the charged offenses.

13             Also, proof of what our evidence would be, Judge, at

14   trial if now is the right time.

15             THE COURT:  Sorry?

16             MR. SKINNER:  If now is the right time, I will offer a

17   proof of the summary of what our evidence will be at trial.

18             THE COURT:  Yes.

19             MR. SKINNER:  We would establish Mr. Hu's guilt beyond

20   a reasonable doubt by, among other things, email

21   communications, loan and business records, and other documents

22   related to the fraud and witness testimony from individuals

23   associated and IIG and from victims.

24             The evidence would show the facts alleged in the

25   information filed in this case, which I will incorporate by

L1S6HUXP

reference, and specifically as co-founder and chief investment
officer of IIG -- which is a registered investment advisor --
from about 2007 to 2019, Mr. Hu conspired with others to
defraud investors in IIG managed funds by overvaluing loans,
creating fake loans, transferring overvalued and fake loans
between IIG managers and funds and using the proceeds from
those fraudulent sales to generate liquidity required to pay
off earlier investors.

Among others things, Hu and co-conspirators arranged
for false audit confirmations to be provided to IIG's auditors
so that false loans could pass auditor scrutiny.

Hu and co-conspirators also caused a retail mutual
fund, a foreign bank, a foreign investment fund, a
collateralized loan obligation trust, and a foreign
institutional investor to invest in defaulted, distressed or
fake loans in IIG funds while misrepresenting to the investors
the true status of those loans.  Hu acted as an investment
advisor for these IIG funds.

Hu and others also caused the creation of shell
entities domiciled in Panama that he used to enter into fake
loan transactions, including supported by fake paperwork, with
the CLO Trust.

To further the fraud, Hu and co-conspirators sent
emails and other foreign and interstate wire communications
with victims, borrowers, and others, from the SDNY.  The

L1S6HUXP

1    evidence would show the conduct was in connection with the

2    purchase and sale of securities – among other things, the

3    retail mutual fund, shares of IIG advised funds, and

4    obligations issued by the CLO were securities involved in this

5    case.

6              THE COURT:  Thank you, Mr. Skinner.

7              Mr. Bohrer, have you reviewed the government's proofs?

8              MR. BOHRER:  Yes, your Honor.

9              THE COURT:  Do you feel that the government can make a

10   prima facie case on each of the three counts?

11             MR. BOHRER:  Yes, your Honor.

12             THE COURT:  Do you know of any defenses that could

13   trump those proof?

14             MR. BOHRER:  No, sir.

15             THE COURT:  Mr. Hu, are you offering to plead guilty

16   to each of these three counts because you believe that you are

17   in fact guilty of each of these three counts?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Undoubtedly, Mr. Bohrer, you prepared a

20   written statement.  So tell me what it is that you did to make

21   you guilty.  You may read it now.

22             MR. BOHRER:  That was directed to Mr. Hu, your Honor.

23             THE COURT:  Yes, Mr. Hu.

24             MR. BOHRER:  Thank you.

25             THE DEFENDANT:  From approximately 2007 through 2019,

L1S6HUXP

in New York City, and elsewhere, together with another person

identified in the information as Co-conspirator 1, and while

acting as an investment advisor, I intentionally and knowingly

participated in a scheme to overvalue distressed loans in IIG

funds, falsified paperwork to create a series of fake loans,

sell overvalued and fake loans to a collateralized loan

obligation trust, and used the proceeds from those sales to pay

off earlier investors.  Through these and other actions using

interstate wires and the mail, I concealed the true value of

IIG funds from investors and transferred fake and overvalued

loans between funds, which I provided investment advisory

services, in order to receive for ourselves management and

performance fees to which we were not entitled.

          I engaged in this conduct in connection with the

purchase and sale of securities, including the retail mutual

fund, IIG advised funds, and securities issued by the CLO

Trust.

          THE COURT:  You were an investment advisor?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Advised them as to such?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Was your office in the Southern District

of New York?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Where was your office?

L1S6HUXP

1          THE DEFENDANT:  It was in Times Square.

2          THE COURT:  Did you commit the frauds using the phones

3    in that office?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Mr. Skinner, is there anything I missed?

6          MR. SKINNER:  No, Judge.  Thank you.

7          THE COURT:  Mr. Bohrer, is there anything you would

8    like me to add?

9          MR. BOHRER:  No, your Honor.

10         THE COURT:  Mr. Hu, I find you guilty of each of the

11   three counts.  I find that your plea of guilty is voluntary,

12   that you understand the consequences, and that there is an

13   independent basis for support of each of the three counts.

14   Accordingly, the Court will enter a plea of guilty on your

15   behalf to Count One, Count Two, and Count Three of the

16   information.

17         Sentencing will occur, Ms. Jones?

18         THE DEPUTY CLERK:  April 29th at 9:00 a.m.

19         MR. BOHRER:  Your Honor, may I be heard on that?

20         THE COURT:  Yes.

21         MR. BOHRER:  In addition to all of the complications

22   inherent in the current situation we find ourselves, we

23   envision sentencing in this case to take place -- at least it

24   would be our hope given it is a critical phase -- in person in

25   court.  Based upon my review of the current situation and news

L1S6HUXP

1    reporting, I think the April date is an exceedingly ambitious

2    date in that regard.  So just considering the reality of the

3    situation, it will be our request that A, the sentencing that

4    is envisioned be in person, B, the realistic date for that I

5    think what we're hearing is some time during the summer as

6    opposed to April.  As I say in addition to all of that, the

7    usual process that would result in an April date is complicated

8    by the situation which we find ourselves in.  So for those

9    reasons, and perhaps others, we would ask that sentencing date

10   be scheduled -- we leave it to the Court of course, but I think

11   realistically speaking, we're looking at something in the

12   summer given all of these considerations.

13             THE COURT:  Does the government have a point of view,

14   Mr. Skinner?

15             MR. SKINNER:  We want the sentencing to proceed

16   expeditiously, but I don't think the summer is a big delay.  So

17   I think the summer makes sense.

18             THE COURT:  Should the goal be the beginning of June?

19             MR. BOHRER:  I was thinking that, your Honor.

20   Frankly, that is ambitious too.  I think what we're hearing is

21   that is a best-case basis and unfortunately nothing has been

22   happening on a best-case basis throughout this pandemic.  So

23   not to quibble with the Court but I do think more realistic

24   would be a July or August date.  Given the government's point

25   of view, I don't hear them pressing back on that.  That would

L1S6HUXP

1    be our suggestion.

2              THE COURT:  The interest of justice suggests that the

3    time of sentencing be reasonably close to the plea.  I am okay

4    to take the plea [sic] and I understand that there is to be a

5    personal appearance in court.  I am okay to take the plea [sic]

6    in the first two weeks of June 2021.  It is a dynamic

7    situation.  It can be in a better situation or it can be a

8    worse situation.

9              MR. BOHRER:  Fair enough, your Honor.  So if I am

10   hearing you correctly, we're looking at, say, the second week

11   in June as a scheduled sentencing date subject to further

12   review in light of changed circumstances?

13             THE COURT:  Yes.  But I am not promising that we grant

14   another adjournment.

15             MR. BOHRER:  I understand.

16             THE COURT:  Ms. Jones, can you give me a date in the

17   week of June 7th.

18             THE DEPUTY CLERK:  June 17th at 9:00 a.m.

19             THE COURT:  The week of June 7th.

20             I got your point.  June 17th the 9:00.

21             Is that okay with defense?

22             MR. BOHRER:  Yes, your Honor.

23             THE COURT:  Is that okay with the government?

24             MR. SKINNER:  Yes, your Honor.

25             THE COURT:  June 17th at 9:00.

L1S6HUXP

1          I instruct you, Mr. Skinner, to obtain a copy of the

2     transcript and to furnish it to the Probation officer before he

3     does any interview.  I instruct the Probation officer to give

4     Mr. Bohrer notice of any interview of his client so that he may

5     be there if he wishes to be there.

6          Is there anything else that I have to do today?

7          MR. SKINNER:  Nothing from the government, your Honor.

8     Thank you.

9          MR. BOHRER:  No, your Honor.  Nothing further from the

10    defense.  Thank you.

11         THE COURT:  The conditions of bail will remain as they

12    are unless someone objects.

13         THE DEPUTY CLERK:  Did you order a PSR?  I didn't

14    hear.

15         THE COURT:  Yes, I did.

16         THE DEPUTY CLERK:  Okay.

17         THE COURT:  Thank you all.

18                              o0o

19

20

21

22

23

24

25